UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:15CV-00087-HBB

TROY D. HANOR                                                                             PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

The Commissioner of Social Security denied Troy D. Hanor's application for disability insurance benefits. Hanor seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Hanor (DN 13-1) and the Commissioner (DN 16) have filed a Fact and Law Summary. Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11).

### FINDINGS OF FACT

Troy Hanor is 46-years-old, completed the twelfth grade, and lives with his wife in Dixon, Kentucky (Tr. 68). From 1998 to 2008, Hanor worked numerous jobs, including commercial duct work for E & M Appliances (Tr. 73), concrete work for A A & K Construction (Tr. 72-73), running

1

a bulldozer for the city of Henderson (Tr. 72), delivery work for Lowe's (Tr. 71), and truck driving for Jeff Bradley and Rand and Allen Trucking (Tr. 70-71).

Hanor was involved in a serious motor vehicle accident in December of 2006, which required he undergo neck surgery six months later (Tr. 66). Hanor believes he has never recovered from the accident and resulting surgery (Id.). From 2008-2011, Hanor was self-employed, performing small construction jobs in the community, such as sawing limbs, roofing, and cleaning gutters (Tr. 66, 69). By 2011, Hanor could no longer perform his work as a handyman because of back pain (Tr. 70).

Hanor applied for disability insurance benefits ("DIB") under Title II, claiming that he became disabled on February 1, 2011, as a result of his neck, lower back, depression, high blood pressure, gout, and acid reflux (Tr. 286). His application was denied initially and again on reconsideration (Tr. 112, 128). Administrative Law Judge Marci P. Eaton ("ALJ") conducted a video hearing in Paducah, Kentucky, on January 22, 2013 (Tr. 62). Hanor attended the video hearing from Madisonville, Kentucky, with his attorney, Ms. Dole (Tr. 64). Stephanie Barnes, an impartial vocational expert, also appeared at the hearing (Id.).

Over a year later, the ALJ held a supplemental video hearing in Paducah, Kentucky, to address additional evidence and a consultative examination performed by Dr. O'Keefe (Tr. 37, 41). Hanor again attended the video hearing from Madisonville, Kentucky, with his new attorney, Bradley Rhoads (Tr. 35). William Harpool appeared as an impartial vocational expert (Id.). The ALJ issued an unfavorable decision on March 27, 2014 (Tr. 28).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R § 404.1520; Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Hanor has not engaged in substantial gainful activity since

February 1, 2011, his alleged onset date (Tr. 21). Second, Hanor has the severe impairments of: "degenerative disc disease; status post cervical fusion at C5-C6; arthritis; obesity; status post amputation and reattachment of the left ring finger; status post carpal tunnel release; and a mood disorder" (Id.). Third, none of Hanor's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 22). Fourth, Hanor has the residual functional capacity ("RFC") to:

> continuously lift 20 pounds and occasionally lift up to 100 pounds. He can continuously carry 20 pounds, frequently carry up to 50 pounds, and occasionally carry up to 100 pounds. He can sit for eight hours out of an eight-hour workday. He can stand or walk for a total of five hours out of an eight-hour workday. He can continuously use the upper extremities for reaching, handling, fingering, feeling, pushing, and pulling. He can continuously operate foot controls bilaterally. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. He should avoid climbing ladders or scaffolds. He should avoid unprotected heights. He can have frequent exposure to moving machinery. He can continuously operate a motor vehicle. He can be exposed to humidity, wetness, dust, odors, fumes, and pulmonary irritants. He can frequently be exposed to extreme cold. He can occasionally be exposed to extreme heat and vibrating equipment. He can be exposed to a loud level of noise, which is equivalent to heavy traffic. In addition, the claimant can remember and carry out simple instructions. He can maintain attention and concentration for a minimum of two-hour time periods in an eight-hour workday. He can frequently interact with supervisors.

(Tr. 23). Additionally, Hanor is unable to perform any of his past relevant work (Tr. 27). Fifth and finally, considering Hanor's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform (Id.).

Hanor appealed the ALJ's decision (Tr. 14-15). The Appeals Council declined review (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Hanor appealed to this Court (DN 1).

## CONCLUSIONS OF LAW

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. See Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

### B. Finding No. 4

Hanor claims that the ALJ failed to properly consider Medical Listing 1.04A at Finding No. 4 (DN 13-1, at p. 3). Hanor believes his medical evidence meets the requirements of Listing 1.04A and accuses the ALJ of improperly "creating her own standard of 'acuteness.'" (Id. at p. 4). The Commissioner counters that the ALJ sufficiently articulated her analysis of Listing 1.04A and that Hanor fails to carry his burden of proving his condition meets each and every requirement of the listing (DN 16, at pp. 3-4).

A claimant must meet *all* of the specified medical criteria of a listing in order to show that his impairment matches the listing. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis added). "It is insufficient that a claimant comes close to meeting the

4

requirements of a listed impairment." Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003) (citing Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986)). Listing 1.04 covers "Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in *compromise of a nerve root . . . or the spinal cord.*" 20 C.F.R. Pt. 404, Subpt P, App. 1, Listing 1.04 (emphasis added). Additionally, to satisfy subpart A of Listing 1.04, a claimant must demonstrate:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakened or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting back or supine).

Id.

Here, the ALJ found that Hanor's spinal disorder did not meet Listing 1.04A because although his MRI from November 16, 2011, reflected "disc protrusion at L5-S1 with deformity and flattening of the right S1 nerve root," the disc protrusion did not appear acute because it had very little signal on T2-weighted images (Tr. 22). The ALJ also noted that Hanor had no spinal stenosis or foraminal narrowing and his lumbar vertebrae otherwise appeared normal (Id.). Lastly, the ALJ indicated that Dr. Kenneth Holder commented that Hanor has some sensory loss and muscle weakness, but the overall medical evidence, including Dr. Holder's progress notes do not regularly document significant sensory loss or muscle weakness (Id.).

Hanor points to Dr. Holder's review of his MRI to prove he meets the requirements of Listing 1.04A (DN 13-1, at p. 3). Dr. Holder's MRI review, however, only proves that Hanor's right S1 nerve root has been flattened, which meets the diagnostic criteria of "compromise of a

5

nerve root" (Tr. 548). As for the paragraph A requirements, Hanor broadly argues that "[t]he remaining medical evidence, including physician notes and statements" meet this criteria (DN 13-1, at p. 4). Hanor includes a citation after this statement to five of Dr. Holder's treatment records.

Unfortunately, Dr. Holder's records do not demonstrate presence of the paragraph A criteria. In fact, Dr. Holder's objective notes from November of 2011 to May of 2013 consistently state that Hanor has a normal gait, neck tenderness, and lumbar spine tenderness (Tr. 543, 591, 600, 637, 655, 919, 923, 927). Treatment notes from Hanor's other physicians also fail to establish the paragraph A criteria. For instance, Dr. Galloway repeatedly indicated that Hanor had a normal range of motion and exhibited no edema and no tenderness (Tr. 856, 859, 863, 867, 897, 930). Additionally, Dr. Donley noted in June and July of 2012 that Hanor had a normal range of motion, normal muscle strength and tone, and normal stability in his cervical and thoracic spine (Tr. 616, 619). Dr. Donley also noted that Hanor's lumbar spine was normal to inspection with no tenderness, no muscle spasm, and an active range of motion (Id.).

The only evidence in the record that supports Hanor meeting the paragraph A criteria is Dr. Holder's statement from August 29, 2012, where he indicated that Hanor has "some limited movement in the forward and backward motion and extension and flexion of the back" and "some sensory loss and some muscle weakness"[1] (Tr. 630). Yet, as the Commissioner points out, Dr. Holder's treatment notes never indicate Hanor had a limited range of motion, sensory loss, or muscle weakness. Dr. Holder also stated that straight-leg raising tests in both sitting and supine

---

1 It is worth noting that Dr. Holder's statement was produced through an interview with Hanor's attorney, where Hanor's attorney asked leading questions such as "[w]ould [Hanor] have any motor loss which would be atropy with associated muscle weakness or just muscle weakness accompanied by sensory or reflex loss?" (Tr. 630).

would reproduce Hanor's pain (Tr. 630), however, only two straight leg raising tests are noted in the record and both were negative (Tr. 423, 456).[2]

The undersigned finds that Dr. Holder's unsupported statement is not sufficient to satisfy the requirements of Listing 1.04A. Hanor has failed to carry his burden in meeting *all* of the specified criteria. The ALJ's decision, therefore, is supported by substantial evidence in the record.

### C. Finding No. 5

#### 1. Treating Physician Opinions

Hanor next argues that the ALJ erred in failing to afford the treating source opinions of Dr. Holder and Dr. Galloway great or controlling weight (DN 13-1, at pp.4-5). Hanor also claims the ALJ erred in failing to specify what weight he was assigning either doctor's opinion (Id. at p. 7). In opposition, the Commissioner claims the ALJ properly discounted the two opinions and that failing to identify the specific weight assigned to each opinion is harmless error (DN 16, at p. 6-7).

The regulations require Administrative Law Judges to evaluate every medical opinion in the record. 20 C.F.R. 404.1527(c). The source of a medical opinion dictates the process by which the Administrative Law Judge gives it weight. Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). Treating sources must be given controlling weight if their opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the claimant's case record. 20 C.F.R. § 404.1527(c)(2); Gayheart, 710 F.3d at 376. If the Administrative Law Judge determines a treating source should not receive controlling weight, she applies factors from the regulations to determine the appropriate weight to assign the opinion. These factors include the length, nature,

---

[2] Both of these straight leg tests occurred in 2010 prior to Hanor's alleged onset date of disability.

and extent of the treatment relationship, the supportability and consistency of the opinion compared to other evidence in the record, and the treating source's area of specialty.[3] 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(5); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Administrative Law Judge must also provide "good reasons" in her decision for the weight given to the treating source opinion. 20 C.F.R. § 404.1527(c)(2); Gayheart, 710 F.3d at 376.

Here, the ALJ declined to afford controlling weight to the opinions of Dr. Holder and Dr. Galloway because their restrictive opinions were not substantiated by evidence in the record or their progress notes (Tr. 25). The ALJ additionally noted that both Dr. Holder and Dr. Galloway are family practice physicians, rather than specialists in neurology, neurosurgery, or orthopedics (Tr. 26). Although the ALJ properly determined that the two opinions were not entitled to controlling weight, she failed to specify the specific weight assigned to the opinions.

Nonetheless, the Sixth Circuit recognizes a narrow set of circumstances in which a violation of the "good reasons" requirement can be deemed "harmless error." Cole v. Astrue, 661 F.3d 931, 941 (6th Cir. 2011). Namely, the violation can be deemed harmless error if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation." Id. (quoting Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (quoting Wilson, 378 F.3d at 547)).

---

3 Nevertheless, the regulations do not require an exhaustive factor-by-factor analysis to satisfy the rule. See Francis v. Comm'r of Soc. Sec., 414 F. App'x 802, 804 (6th Cir. 2011).

8

As to Dr. Holder's opinion, the undersigned cannot conclusively determine that it is patently deficient. Parts of his opinion are entirely unsubstantiated by his treatment notes, but Dr. Holder does mention some objective findings in the opinion, including Hanor's right disc protrusion with flattening of the right S1 nerve root (Tr. 629). The second harmless error exception does not apply to Dr. Holder's opinion either because the ALJ did not make any findings consistent with Dr. Holder's opinion.

The third harmless error exception does apply to the ALJ's analysis of Dr. Holder's opinion. Although the ALJ's explanation for rejecting Dr. Holder's opinion was brief, other portions of the ALJ's decision thoroughly discussed inconsistencies between the opinion and the record evidence. For instance, the ALJ noted that Dr. Holder's progress notes did not regularly document the presence of significant sensory loss or muscle weakness (Tr. 22). The ALJ also pointed to Dr. Holder's consistent findings that Hanor's gait was normal and range of motion appeared to be normal (Tr. 24). The undersigned finds that the ALJ met the goal of § 1527(d)(2) because his repeated discussion of Dr. Holder's opinion and treatment notes permitted meaningful review.

Similarly, the ALJ's failure to identify the weight assigned to Dr. Galloway's opinion falls into the third harmless error exception. The ALJ discussed Dr. Galloway's treatment notes that revealed Hanor had a normal range of motion and that Hanor reported he was stable and doing well on his medication (Tr. 24). This evidence, along with the ALJ's explanation that Dr. Galloway is not an orthopedic or neurology specialist, proves the ALJ met the goal of the regulations. It is implicit in the ALJ's opinion that she gave little to no weight to the opinions of Dr. Holder and Dr. Galloway. Thus, the ALJ's rejection of Dr. Holder's opinion and Dr. Galloway's opinion are supported by substantial evidence in the record.

### 2. Consultative Examiner, Dr. Dennis O'Keefe

Hanor claims the ALJ improperly adopted the opinion of one-time examining physician, Dr. Dennis O'Keefe (DN 13-1, at pp. 7-8). The Commissioner argues that Dr. O'Keefe submitted a very detailed and through report, which included an MRI review and physical examination, revealing mostly unremarkable findings (DN 16, at p. 7).

In weighing a consultative examiner's opinion, an Administrative Law Judge must evaluate the factors listed in 20 C.F.R. § 404.1527(c). As mentioned above, these factors include: the length, nature, and extent of the treatment relationship, the supportability and consistency of the opinion compared to other evidence in the record, and the source's area of specialty.

The ALJ adopted Dr. O'Keefe's opinion because it was reasonably substantiated by Dr. O'Keefe's own independent medical findings (Tr.26). For instance, Dr. O'Keefe recorded that Hanor's electromyography and nerve conduction were normal, that there was no evidence of cervical radiculopathy in Hanor's left upper extremety, and that Hanor had a full, normal range of motion at the elbows, shoulders, hips, knees, and ankles bilaterally (Id.). The ALJ also indicated that Dr. O'Keefe's opinion is supported by the radiologic and physical examination findings by Dr. Holder and Dr. Galloway (Id.). Finally, the ALJ discussed that Dr. O'Keefe was a neurologist that evaluated Hanor once after his first administrative hearing (Id.). Because the ALJ evaluated numerous factors from 20 C.F.R. § 404.1527(c) in determining that Dr. O'Keefe's opinion should be afforded great weight, the undersigned finds this determination is supported by substantial evidence.

### 3. Hanor's Credibility

Hanor argues the ALJ erred in discounting his credibility (DN 13-1, at p. 11). Specifically, Hanor believes that his ability to engage in some daily activities should not

undermine his credibility (Id.). The Commissioner counters that the ALJ considered numerous factors in discounting Hanor's credibility (DN 16, at pp. 8-9).

In evaluating a claimant's RFC, the Administrative Law Judge may properly consider the credibility of the claimant. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted). The Sixth Circuit has fashioned a two-prong test for evaluating a claimant's assertions of disabling pain. First, the claimant must present objective evidence of an underlying medical condition. Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). Second, "there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition" or "the objectively determined condition must be of a severity which can reasonably be expected to give rise to the alleged pain." Id. Here, the ALJ found that Hanor met the first prong of the Duncan test (Tr. 24). However, the ALJ determined that Hanor's allegations concerning the intensity, persistence, and limiting effects of his symptoms are not reasonably supported by "the overall medical evidence and history of treatment do not reasonably support the degree of limitation [Hanor] has suggested" (Tr. 24).

In making a credibility determination, Social Security Ruling 96-7p provides that an Administrative Law Judge must consider the record as a whole, including objective medical evidence, the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). As mentioned above, the objective notes of Hanor's treating physicians do not coincide with Hanor's allegations of total disabling pain. The ALJ also noted that Hanor's "apparent activity level" further undermines his credibility (Tr. 25). The ALJ pointed to a third party function report indicating Hanor is able to drive a car, shop for groceries, and care for a pet dog

(Id.). Additionally, the ALJ mentioned Hanor's injury in June of 2013 from working on a tiller engine (Id.).

Accordingly, the ALJ did not solely rely on Hanor's daily activities in making her credibility determination. Because the ALJ considered the record as a whole and compared the objective medical evidence with Hanor's subjective testimony, the undersigned finds the determination is supported by substantial evidence.

### 4. Combined Effect of Hanor's Impairments

Hanor makes multiple arguments that the ALJ failed to consider the combined effect of his impairments: (1) The ALJ failed to consider all of the records regarding Hanor's struggles with pain; (2) The ALJ did not fully consider Listing 1.04A; (3) The ALJ failed to recognize the full extent of Hanor's osteoarthritis; and (4) The ALJ inappropriately required his conditions be "acute" (DN 13-1, at pp. 8-10). The undersigned has already demonstrated that Hanor's first two claims are meritless.

As to Hanor's third claim, the undersigned finds the ALJ appropriately evaluated his osteoarthritis. The ALJ noted that radiologic findings regarding Hanor's arthritis were not overly significant because the findings from September of 2011 were "essentially unremarkable" and were not "acute" (Tr. 25). The ALJ further discussed that although physical findings indicated "some degenerative changes," the motion in his right ankle joint appeared only slightly limited, and both ankles appeared to be stable with manipulation (Id.). Most notably, the ALJ addressed Dr. O'Keefe's physical findings, which indicated Hanor had a full, normal range of motion in his ankles bilaterally (Tr. 26). Dr. O'Keefe also noted that Hanor appeared to have "mild to moderate

arthritis involving the ankles most likely related to his excessive weight"[4] (Tr. 669). The ALJ's findings regarding Hanor's osteoarthritis are supported by substantial evidence in the record.

Likewise, the undersigned finds the ALJ appropriately discussed that Hanor's conditions were not "acute." Hanor believes the ALJ added the requirement that a condition be acute in order to be disabling (DN 13-1, at pp. 9-10). The Commissioner explains that the ALJ was merely repeating the medical determinations made by radiologists, rather than making her own acuteness requirement (DN 16, at p. 10).

The undersigned agrees. When the ALJ mentioned that Hanor's disc protrusion did not appear acute, she was repeating from Radiologist Brooks Horsley's MRI review (Tr. 22, 24, 548). Again, when the ALJ noted there were no acute findings regarding degenerative changes in Hanor's ankle joints, she was repeating from Jay Bronner's radiology reports (Tr. 25, 560-61). Thus, the ALJ appropriately considered radiologist findings that Hanor's conditions were not acute. The undersigned finds the ALJ's evaluation of Hanor's impairments in combination is supported by substantial evidence in the record.

### 5. Improper Speculation as to Medical Conditions

Hanor makes two claims that the ALJ improperly speculated and made independent medical findings (DN 13-1, at p. 10). First, Hanor argues the ALJ speculated by affording great weight to Dr. O'Keefe over his two treating physicians (Id.). Second, Hanor argues the ALJ acted as a medical expert in discrediting his conditions simply because they were not acute injuries (Id. at pp. 10-11). The undersigned has thoroughly evaluated these arguments in the preceding sections and found they are without merit.

---

4 The ALJ also addressed Hanor's obesity, pursuant to Social Security Ruling 02-1p, in making her RFC determination.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies: Counsel